IN RE WILLIAM G. THEMELIS.

(83 A2d 507)

May Term, 1951.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed October 2, 1951.

*Franklin P. Jones* for the respondent.

*Clifton G. Parker,* Attorney General, for the State.

CLEARY, J. This is a presentment by the Attorney General charging the respondent, an attorney of this Court, with unethical

and unprofessional practice of the law and seeking his disbarment because he represented adverse interests in seven separate actions for divorce, the first two involving one married couple and the last five involving another married couple.

In October, 1947, the respondent acted as attorney for one Robinson in a divorce action brought by his wife charging intolerable severity, non-support and desertion; that case was discontinued. Two years later the respondent brought a similar divorce action for Mrs. Robinson, charging the same grounds for divorce. The respondent's answer in this proceeding for disbarment states that both of the Robinsons knew of the prior employment and consented to the bringing of the second action; that all facts and conduct relevant to the first action were condoned by reconciliation of the parties; that the second libel mentioned that the prior action had been brought and subsequently discontinued; that no hearing was ever had and that no harm came to either party as a result of the respondent's conduct.

The other five cases are more involved and it is necessary to give the details. On June 21, 1947, the respondent brought a divorce action for Mary Squiers against Robert Squiers charging adultery, intolerable severity, non-support and desertion. On August 12, 1947, the respondent, as attorney for Mrs. Squiers, requested that said action be entered "Discontinued" on "the ground of reconciliation" and that was done. On July 9, 1947, Robert Squiers brought a divorce action against Mary Squiers charging intolerable severity and seeking a temporary custody order relating to the children of the parties. Temporary hearing was had on July 12, 1947. The respondent acted as attorney for Mrs. Squiers and on July 14, 1947, he filed a written motion to reopen the case. That case was discontinued on August 26, 1947. On August 15, 1947, Mrs. Squiers brought a divorce action charging Mr. Squiers with intolerable severity, non-support and desertion. The libel mentioned the action brought on June 21, 1947, but did not mention the action brought on July 9, 1947. No appearance of record was made by the libellee or any attorney in his behalf in the case brought on August 15, 1947, but on August 25, 1947, a stipulation was made and filed relative to matters of support, custody of children and disposition of property. The respondent acted as attorney for Mrs. Squiers in all matters relating to that case and it was entered "Discontinued" on February 18, 1948. On February 19, 1949, Mrs. Squiers brought

an action for support against Mr. Squiers and alleged the prior stipulation of the parties in the divorce action brought by her on August 15, 1947. After hearing a temporary order was issued on March 5, 1949, and the case was entered "Discontinued" on December 6, 1949. The respondent acted as attorney for Mr. Squiers in all matters relating to that petition for support. On June 11, 1949, Mr. Squiers brought an action for divorce against Mrs. Squiers charging intolerable severity, non-support and desertion and referred only to the two prior proceedings between the parties brought on August 15, 1947, and February 19, 1949. The respondent acted as attorney for Mr. Squiers in all matters relating to the action brought on June 11, 1949, and on April 3, 1950, filed a written motion for discontinuance. That entry was made on April 8, 1950.

The respondent's answer states that the failure to mention the action of July 9, 1947, in the case brought on August 15, 1947, was by inadvertence and not intentional; that before appearing for Mr. Squiers in the action for support, brought by Mrs. Squiers on February 19, 1949, the respondent disclosed to the court his prior retainer by Mrs. Squiers and continued to act for Mr. Squiers in the action of February 19, 1949, only after the court expressed its willingness that he appear; that no objection was made by Mrs. Squiers or her attorney, both of whom were present at the time he made said disclosure to the court; that said appearance followed a reconciliation of the parties subsequent to the action of August 15, 1947, condoning all conduct prior to the reconciliation, including the facts on which the cases brought on June 21, 1947, July 9, 1947, and August 15, 1947, were based; that no material fact was concealed from the parties or the court; that no trial was ever had and that no harm came to either party as a result of his conduct.

At the time the action of February 19, 1949, was pending the respondent did tell the court of his prior employment by Mrs. Squiers. The presiding judge then told the respondent "that it was a matter for the respondent to decide, that he knew what the ethics of the situation were and what it would require of him to be released by one side and to be hired by the other, and that he should be governed by the dictates of his conscience and do what is right; that he was not barred from going ahead with the matter if he so desired."

The presiding judge erred when he said that the respondent was

not barred from going ahead with the matter if he so desired. The matter then pending and to be heard by the court was the temporary support and custody of the minor children of the parties. The respondent was allowed to appear for the husband although he had previously appeared for the wife in a previous action brought by her which involved the identical question. There was a clear conflict of interest and the court below had not only the right but the duty to prohibit the respondent from acting as attorney in the case.

Section 22 of the former Code of Ethics of the Vermont Bar Association is as follows: "Accepting Adverse Retainers. The duty not to divulge the secrets of clients extends further than mere silence by the attorney, and forbids accepting retainers or employment afterwards from others involving the clients' interests, in the matters about which the confidence was reposed. When the secrets or confidence of a former client may be availed of or be material, in the subsequent suit, as the basis of any judgment which may injuriously affect his rights, the attorney cannot appear in such cause."

The Canons of Professional Ethics of the American Bar Association were adopted by the Vermont Bar Association in October, 1949, in lieu of the Code of Ethics of the Vermont Bar Association. Canons 6 and 37 contain the following: "The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed." "It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge or consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client."

Thornton on Attorneys at Law Vol. 1 § 174 says "It is a well settled general rule that an attorney cannot represent conflicting interests, or undertake the discharge of inconsistent duties. When he has once been retained and received the confidence of a client, he

cannot accept a retainer from, or enter the service of, those whose interests are adverse to his client in the same controversy, or in matters so closely allied thereto as to be, in effect, a part thereof." At § 176 Thornton says "the best means of determining the existence of a conflict is whether, at any stage of the proceedings, an attorney's duty to one interest will compel him to assail or neglect the other; if so, he must decline to represent one or the other. The test of inconsistency is not whether the attorney has ever been retained by the party against whom he proposes to appear, but whether his accepting the new retainer will require him, in forwarding the interests of his new client, to do anything which will injuriously affect his former client in any matter in which he formerly represented him, and whether he will be called upon in his new relation to use against his former client any knowledge or information acquired through his former connection."

We think an attorney should subject himself to a test even more rigid. He should refrain from accepting any employment which may require him to do anything which will injuriously affect his former client in any matter in which he formerly represented him, and where he may be called upon in his new relation, to use against his former client, any knowledge or information acquired through his former connection. Paramount duties of a lawyer are to see that justice is done, to aid in its administration, to assist in preserving the dignity and authority of the court before the public and to keep the trust and confidence that a client has placed in him.

Conflict of interest is almost certain in divorce litigation. No type of action involves more confidences or is more susceptible of advantage based on privileged communications. No type of litigation casts a greater burden on a court to insure that decision in such cases shall be without improper evidence and to make certain that the court shall not become the vehicle through which a marriage may be dissolved by consent or collusion.

Reconciliation of the parties after discontinuance of a divorce action does not justify employment by the adverse party in a later action. Condonation is always conditional; it is canceled when the old injury is repeated or a new injury occurs. *Langdon* v. *Langdon,* 25 Vt 678, 679; *Davidson* v. *Davidson,* 111 Vt 68, 71, 10 A2d 197.

County Court Rule 15 § 8 requires that in any libel or petition for divorce, for annulment of marriage, or for separate support,

there shall be set forth therein whether any such proceedings have been brought by either party against the other. ·The respondent's answer says that his violation of that rule was by inadvertence and not intentional. The answer probably speaks the truth in that respect. But his inadvertence does not justify his conduct.

Knowledge of prior employment and consent to adverse employment by the parties might justify an attorney in matters of private interest; but not in a matter of divorce or legal separation. The fact that a divorce case was later discontinued and no harm resulted to the parties does not excuse an attorney who has represented conflicting interests. The result does not justify the wrong. Other interests than those of the parties are involved. Such cases often affect the rights of children, innocent and helpless victims of their parents' selfishness and sin. The attorney's duty to the court and to the public at large must be considered. The due and orderly administration of justice, the honor and purity of the profession, the protection of clients, the dignity and reputation of the court itself are all endangered.

The interests of the parties involved in the matters here complained of were adverse. Therefore the acts of this respondent were unethical and improper and cannot be countenanced. *In re Wakefield,* 107 Vt 180, 189, 177 A 319. Merely to express disapproval, or censure, would be to treat lightly matters vitally affecting the integrity of the profession and the interests of society. *In re Aldrich,* 86 Vt 531, 540, 86 A 801. The case presents a situation where the respondent's zeal outran his discretion. However this may be, it is time that a salutary lesson be given to the end that fidelity and loyalty may be duly recognized and appreciated, and that lapses therefrom may receive proper condemnation. In the case at bar there is the extenuating circumstance that in one instance the court below allowed the respondent to proceed.

So upon careful consideration of the whole case we are satisfied that a just and salutary result will be reached by suspension rather than by disbarment. *Judgment that said William G. Themelis is suspended from the office of attorney and counsellor at law and from the office of solicitor in chancery for the period of three months, beginning October 2, 1951, and ending January 2, 1952.*