## In re William M. McCarty, Jr.

[649 A.2d 764]

No. 93-372

Present: Allen, C.J., Gibson, Morse and Johnson, JJ.

Opinion Filed September 9, 1994

*Shelley A. Hill*, Bar Counsel, Montpelier, for Petitioner-Appellee.

*Douglas Richards* and *Sheilla C. Files* (On the Brief) of *Douglas Richards, P.C.*, Springfield, for Respondent-Appellant.

**Per Curiam.** William McCarty, a lawyer licensed in Vermont since 1967, appeals the Professional Conduct Board's (the Board) decision that he violated DR 6-101(A)(3) (neglecting a matter entrusted to him) and DR 1-102(A)(7) (engaging in conduct that adversely reflects on his fitness to practice law). He claims that (1) the Board lost its authority by the hearing panel's failure to comply with the requirement to issue a decision within sixty days of hearing; (2) evidence adduced at the hearing did not support the Board's findings of fact; and (3) his conduct did not violate DR 6-101(A)(3) or DR 1-102(A)(7). We agree that respondent should not be disciplined for a violation of DR 1-102(A)(7). The hearing panel's recommendation of public reprimand is approved for violation of DR 6-101(A)(3).

The Board found a single violation of DR 6-101(A)(3) (neglect) and a single violation of DR 1-102(A)(7) (unfitness) following a hearing before a panel convened to consider bar counsel's petition alleging two counts of neglect and two counts of unfitness. Bar counsel charged respondent with two code violations for his representation of a client in a post-divorce visitation dispute and two code violations for his representation of two people who had requested wills. The Board concluded that respondent's representation of all these clients was "unduly prolonged contrary to the clients' expressed desire for prompt attention, causing the clients unnecessary anxiety, aggravation and expense." This conclusion formed the basis of the neglect violation. The Board also concluded that that neglect plus respondent's treatment of the will clients in an undignified manner on at least one occasion constituted the unfitness violation. No issues are raised on appeal over the Board's consolidation of four counts into two counts.

## I.

### A.

The first complainant, Susan Stemm, retained respondent in November 1988 to resolve visitation disputes following a Wyoming divorce giving her custody of the parties' 5-year-old son and visitation to her ex-husband. Stemm sought to limit her ex-husband's visitation because, she claimed, he had abused the boy. In February 1989, Stemm expressed her sense of urgency because the father had

planned a month-long summer visitation at his home in Wyoming. The child was experiencing such anxiety over visitation that he required weekly counselling. Respondent advised Stemm that he would seek relief in Vermont on the issue of visitation.

Respondent's associate, Susan Hatheway, initially worked on Stemm's case. In April 1989, she prepared a motion to modify the Wyoming decree to be filed in Windham Superior Court. Shortly after May 15, Hatheway and another associate left the firm, leaving respondent as the firm's only attorney.

On June 8, 1989, Stemm expressed impatience with respondent because respondent had not yet filed the motion. Informing respondent that she did not intend to allow the summer visitation, Stemm asked whether she should seek relief in Wyoming instead of Vermont. Respondent told her that jurisdiction should be in Vermont, but did not advise her that simply disregarding the Wyoming divorce judgment could result in proceedings against her in Wyoming.

At no time during the summer of 1989 did respondent file the motion to modify in any court. He did nothing further in Stemm's behalf. After respondent failed to return Stemm's phone calls, he finally met with her in October 1989, at which time the relationship terminated. Stemm refused to allow her son to visit his father in Wyoming that summer. The father responded by instituting contempt proceedings in Wyoming. She defended by hiring a Wyoming attorney, which cost Stemm approximately $20,000 in attorney fees. As a result of this incident, she notified the Professional Conduct Board of respondent's behavior.

## B.

The second complainant, Richard Wysanski, contacted respondent's associate, Susan Hatheway, in October 1988, to have wills prepared for himself and a friend. Respondent instructed Hatheway to conduct the intake interview and charge $ 130 for the two simple wills, which he would draft himself. Hatheway met with the clients in November.

In May 1989, the clients provided estate planning information to Hatheway, at which time she informed Wysanski that she would be leaving the firm. She indicated she would ask respondent to draft the wills. Between May and September 1989, both clients called respondent's office numerous times to find out why their wills had not yet been prepared. Respondent did not return these calls, and when contact was finally made, respondent became rude and sarcastic and suggested they hire another attorney.

The clients then contacted Hatheway to intervene on their behalf. She wrote to respondent. Rather than prepare the wills, respondent returned the $130 retainer to the clients at the end of September, claiming that he had been too busy to prepare them.

## II.

Respondent first argues that the Board's decision should be reversed because the panel submitted its report to the Board beyond the time set forth in A.O. 9 Rule 8(C), which states in part:

> The hearing panel shall in every case submit a report containing its findings and recommendations . . . to the Board within 60 days after the conclusion of its hearing.

The panel submitted its report to the Board about ninety days after the conclusion of the hearing.

Failure to comply with a statutory deadline does not necessarily require a sanction unless the statute creating the limit expressly specifies a consequence for failure to meet it. *In re J.R.*, 153 Vt. 85, 92, 570 A.2d 154, 157 (1989) (Court will not imply a consequence in absence of one specified by legislature); see also *In re Mullestein*, 148 Vt. 170, 173–74, 531 A.2d 890, 892 (1987) (statutory deadline not mandatory unless consequence for failure to comply specified). Failure to meet a rule deadline should stand on no different footing, especially when no prejudice by the late filing is apparent.

Next, respondent claims that the evidence is insufficient to support certain findings of fact by clear and convincing evidence. This Court must accept the Board's findings of fact unless they are clearly erroneous. A.O. 9 Rule 8(E). As long as the Board applies the correct standard of proof, the Board's findings will be upheld if they are clearly and reasonably supported by the evidence. *In re Karpin*, 162 Vt. 163, 165, 647 A.2d 700, 701 (1993).

The essential finding that respondent took on cases which he failed to reasonably pursue is fully supported. Respondent does not so much challenge the finding of his neglect, but rather attacks tangential details not essential to that conclusion. For instance, he claims that the Board's finding that Hatheway finalized the motion to modify the Wyoming decree in April is clearly erroneous because he testified that he edited the motion in June. The important issue, however, is not the day on which the motion was ready to be filed, but that respondent never filed any motion, developed any plan, or devised any strategy to address his client's legal needs.

Nevertheless, his assertion that the evidence was insufficient to support the Board's findings is without merit. Hatheway testified that the motion was in final form and ready to go when she last worked on it. Respondent's records show that her last billing on the account was April 28, 1989. Based on this evidence, the Board could reasonably conclude that the motion to modify was complete on April 28, 1989.

Respondent's attacks on the accuracy of other findings also concern unessential details. He questions the formation date of his and Stemm's representation agreement, maintaining that they did not agree that he would represent her in the custody case until a short time after their first meeting in November 1988. Respondent states that the Board incorrectly attributed Stemm's concern about the summer 1989 visitation to their first meeting. Although the Board may have been mistaken about the timing of certain communications, these facts were not essential to the outcome. Respondent makes no argument as to how these errors regarding the timing of communications relate to his overall conduct under the code.

■ Respondent maintains that it was Hatheway who controlled Stemm's file and that he should not be responsible for her neglect. Hatheway did a conscientious and thorough job, however, and it was not until she left respondent's employ in May 1989 that the Stemm matter became neglected. Respondent never followed up in any meaningful way on his associate's work. The evidence was abundant that respondent held himself out as ultimately responsible for all files.

■ Next, respondent claims that the following finding is irrelevant and immaterial:

10. Ms. Hatheway left the Respondent's employ shortly after May 15, 1989. This event, coupled with the contemporaneous loss of Respondent's only other associate, left Respondent severely short-handed and over burdened with work during the summer of 1989. Respondent's practice became one of "crisis management", i.e. he was forced to devote his time and attention only to those matters he deemed most urgent. Nevertheless, no evidence was presented that Respondent took any action to alleviate this situation by obtaining additional help or voluntarily withdrawing from non-critical matters. Indeed, Respondent failed to undertake a review of his pending matters to set priorities, but simply reacted to emergencies.

This finding was actually helpful to respondent. If the Board had found that he purposely failed to attend to Stemm's legal needs the

infraction would have been more serious. Respondent submits that no evidence was submitted that he "failed to undertake a review of his pending matters to set priorities." The evidence, however, was overwhelming that respondent did not adequately respond to Stemm's communications and allowed her case to remain idle. Simply put, the Board could infer respondent did not manage his work.

■ Respondent submits that there was no real emergency regarding visitation during the summer of 1989 because the father was not pushing for it. Respondent bases this on the fact that Stemm had indicated to her ex-husband she was not going to allow visitation and he was calm about her position. According to respondent, Stemm was handling the matter on her own, and the motion to modify visitation did not need to be made.

We disagree because Stemm hired respondent to advise her on how to solve the visitation problem. Respondent outlined his preferred course of action beginning with the filing of a motion to modify, a strategy with which Stemm agreed. Respondent did not follow through and never changed his advice. He merely abandoned the plan for legal action. What respondent characterizes as a nonemergency caused his client to litigate the dispute in Wyoming contrary to respondent's preferred strategy. Respondent had even written opposing counsel in Wyoming in early June 1989, clearly stating that he represented Stemm, and specifically mentioning his plan to modify the divorce order.

Respondent's real challenge is based on his view that, while he may have been somewhat remiss in supervising the work being done by his associate, his conduct does not rise to the level of neglect sufficient to warrant public reprimand. We disagree.

This was not a close case on the facts. The Board found on uncontroverted evidence that respondent maintained control of Stemm's file. Respondent testified that he was responsible for every file in his office. Respondent did not adequately supervise his associate, whom he knew had little experience with divorce issues. He did not devote any appreciable time to the custody case even after Hatheway left his employ. Stemm expected respondent to resolve the issue of visitation. Respondent procrastinated until Stemm could no longer tolerate the situation. Respondent also admitted that he failed to prepare the wills for the other clients. The evidence amply supported the violation of DR 6-101(A)(3).

■■ Finally, respondent claims that his conduct did not rise to a level sufficient to adversely reflect upon his fitness to practice law as

required by DR 1-102(A)(7). The violation of DR 1-102(A)(7) was based on the Board's finding that respondent acted in an undignified manner during a telephone conversation with a client together with its finding that respondent neglected matters entrusted to him. This Court has upheld violations of DR 1-102(A)(7) for embezzlement, *In re Mitiguy*, 161 Vt. 626, 641 A.2d 362 (1994), disparaging another attorney, *In re Illuzzi*, 160 Vt. 474, 481–82, 632 A.2d 346, 349 (1993), failing to provide an expense accounting and falsely asserting an oral agreement between attorney and client, *In re Bucknam*, 160 Vt. 355, 362–63, 628 A.2d 932, 935 (1993), and attempting to purchase cocaine, *In re Berk*, 157 Vt. 524, 526, 602 A.2d 946, 947 (1991). A violation of DR 6-101(A)(3) (neglecting a matter entrusted to an attorney) by itself, however, does not per se adversely reflect upon an attorney's fitness to practice law. See *In re Billewicz*, 161 Vt. 631, 632, 641 A.2d 368, 369 (1994) (no DR 1-102(A)(7) violation for failure to file a lawsuit or prepare a case until two weeks before tolling of statute of limitations, then withdrawing representation).

■ In this case, the neglect occurred when respondent lost both his associates simultaneously. Although he should have taken steps to adapt to the situation, his neglect under these circumstances is better addressed solely under DR 6-101(A)(3). Respondent's rudeness to his client on the telephone, alone, does not rise to such a level as to adversely reflect upon his fitness to practice law. Therefore, we do not agree that respondent violated DR 1-102(A)(7)

■ We conclude that the violation of DR 6-101(A)(3) alone is sufficient to warrant a public reprimand. "Reprimand is generally appropriate when a lawyer . . . does not act with reasonable diligence in representing a client." ABA Standards for Imposing Lawyer Sanctions, Standard 4.43 (1991). See *In re Billewicz*, 161 Vt. at 632, 641 A.2d at 369 (violation of DR 6-101(A)(3) warrants public reprimand).

*William M. McCarty, Jr. is hereby publicly reprimanded for violation of DR 6-101(A)(3).*