### In re Richard Gadbois, Esq.

[786 A.2d 393]

No. 00-026

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 21, 2001

*L. Brooke Dingledine* of *Valsangiacomo, Detora & McQuesten, P.C.*, Barre, for Appellant.

*Jessica G. Porter* and *Michael E. Kennedy*, Disciplinary Counsel, Burlington, for Appellee.

**Dooley, J.** Respondent, Richard Gadbois, Esq., appeals the Professional Conduct Board's decision that he violated the Code of Professional Responsibility:* DR 4-101(B)(3) (using a confidence or secret of a client for the advantage of another); DR 5-105(A) (accepting employment even though it would likely involve him in representing differing interests); and DR 1-102(A)(7) (engaging in conduct adversely reflecting upon fitness to practice law). Respondent argues on appeal that the Board erred in finding he violated any disciplinary rule and committed a number of procedural errors. We reach the merits and reverse.

Respondent represented Richard Rainville in his divorce from his first wife in 1980 and 1981. Rainville's first wife accused him of verbally and mentally abusing her during the marriage. During this representation, Rainville discussed various aspects of his life with respondent. In the divorce proceedings the Franklin Superior Court found Rainville to be more at fault for the marriage ending because of his temper and assaultive behavior. Shortly after the completion of the divorce, respondent represented Rainville in connection with a property tax abatement. In the years since the representation was

---

\* The references are to the Code of Professional Responsibility rather than the Rules of Professional Conduct because the conduct at issue predates our adoption of the Rules of Professional Conduct.

completed, respondent has had only limited contact with Rainville: in connection with a will respondent drafted for Rainville's father, and in connection with Rainville's purchase of property from an estate for which respondent was the administrator.

In 1994, Rainville's second wife filed for divorce citing verbal and mental abuse, using respondent to represent her. Rainville was shocked that respondent appeared as his wife's lawyer because he believed respondent "knew him 'from all ends.' " In response, Rainville asked his lawyer to request that respondent withdraw, which the lawyer did by letter. When respondent refused to withdraw, Rainville's lawyer moved to disqualify him alleging that respondent gained confidential information from the former representation of Rainville "which information is now likely to be detrimental to defendant in the instant case." The court denied the motion, indicating that ethical complaints should go to the Professional Conduct Board (the Board).

Rainville then changed counsel, and on June 2, 1995, his new lawyer filed a complaint with the Board. The lawyer also renewed the motion to disqualify respondent, relying on an affidavit from Rainville which stated that he gave respondent confidential information about "many aspects of my background, my marriage and my personal life" and "about me and my former wife's family life, life styles, habits, personalities and characters." Rainville indicated that he feared that respondent would use against him some of the information. Concluding that Rainville had demonstrated an "appearance of conflict, and thus the appearance of impropriety," after first denying the motion to disqualify respondent again, pending submission of supporting authority, the court granted the motion, and respondent withdrew.

A hearing panel for the Board then went forward on the complaint. Recognizing that "the Code of Professional Responsibility does not have a specific provision outlining the circumstances under which an attorney may accept representation which is adverse to a former client," the panel analyzed the facts under the American Bar Association, Model Rules of Professional Conduct Rule 1.9, which were not then in effect in Vermont, and under this Court's decision in *State v. Crepeault*, 167 Vt. 209, 704 A.2d 778 (1997). It concluded that respondent violated DRs 1-102(A)(7), 4-101(B)(3), and 5-105(A) of the Code of Professional Responsibility by representing "Mrs. Rainville in her divorce from Mr. Rainville, even though he had represented Mr. Rainville in his first divorce."

The majority of the Board accepted the panel's findings and conclusions, adding:

> The facts show that during the representation of the second wife, respondent endeavored to use his knowledge and prior representation of husband against him. For instance, he told husband's new counsel that respondent's "participation would positively affect the dynamics of the case" and that husband would be more likely to settle if he were working with a "known cast of characters."

In response to respondent's renewed argument that representing a new client against a former client does not violate the Code of Professional Responsibility, the Board stated:

> Representation of subsequent, conflicting interests in divorce cases violates the lawyer's duty of loyalty and confidentiality to the original client. It has been prohibited in Vermont for some time. See, e.g., *In re Themelis*, 117 Vt. 19, 83 A.2d 507 (1951) (lawyer disbarred for representing subsequent conflicting interests in divorce case based on former Canons of Professional Ethics). The Code of Professional Responsibility, as interpreted by several courts throughout the country, implicitly carried forward that prohibition. See ABA/BNA Lawyers' Manual on Professional Conduct, 51:205-218. The Rules of Professional Conduct, adopted in Vermont this past September 1, made that prohibition explicit. Rule 1.9, Vermont Rules of Professional Conduct.

Based on its findings and conclusions, the Board recommended that we publicly reprimand respondent and require him to reimburse his former client the attorneys' fees he incurred in attempting to disqualify respondent from representing his wife. Four members of the Board dissented from the finding that respondent violated DR 4-101(B)(3), but concurred in the proposed sanction based on the violation of DR 1-102(A)(7).

Respondent appeals, raising a number of procedural issues and arguing that the facts do not support the violation of any disciplinary rule. We begin with consideration of the merits.

■ The Vermont constitution gives this Court "disciplinary authority concerning all judicial officers and attorneys at law in the State." Vt. Const. ch. II, § 30. In assisting the Court with judicial conduct

proceedings, the Board collects facts and advises the Court of its findings. See *In re Hill*, 152 Vt. 548, 555, 568 A.2d 361, 365 (1989). Although the Board's recommendations are shown "deference," their recommendations are not binding on this Court, and we have the final decision concerning discipline. *In re Berk*, 157 Vt. 524, 528, 602 A.2d 946, 948 (1991); see also *In re Harrington*, 134 Vt. 549, 552, 367 A.2d 161, 163 (1976).

We stress that this case deals with standards of professional regulation that are no longer in force. By adopting the American Bar Association, Model Rules of Professional Conduct, with appropriate amendments, we have as of September 1, 1999 specifically stated the ethical rules applicable when a lawyer "side switches," that is, represents a present client against a former client. Rule 1.9(a) provides:

### Rule 1.9. Conflict of Interest: Former Client

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Even before the adoption of the model rules, we have applied its standard to disqualification motions. See *Stowell v. Bennett*, 169 Vt. 630, 632, 739 A.2d 1210, 1212 (1999) (mem.); *Crepeault*, 167 Vt. at 216, 704 A.2d at 783. Rule 1.9(a) states what has been termed a prophylactic rule that is intentionally broad to ensure that a lawyer does not use confidential information acquired from a former client against that client and to avoid even an appearance of impropriety. See C. Wolfram, Modern Legal Ethics § 7.4.2, at 364 (1986). Especially in disqualification situations, the former client should not be put in the position of disclosing the confidential information in order to protect it. *Id.* at 360; *Crepeault*, 167 Vt. at 216-17, 704 A.2d at 783.

We agree with the Board that respondent's conduct would violate Rule 1.9(a) if it governed this case. We also agree with the family court's disqualification decision. The difficulty with this case is that the prophylactic rule now stated in Rule of Professional Conduct 1.9(a) was not contained in its predecessor, the Code of Professional Responsibility, which was in effect when respondent entered his appearance in the divorce case against his former client. The Board

hearing panel acknowledged this difficulty. Nevertheless, it found a violation of two specific disciplinary rules, DR's 4-101(B)(3) and 5-105(A), and a general disciplinary rule, DR 1-102(A)(7), apparently on the view that the combination of these disciplinary rules created a prohibition on respondent's conduct.

We cannot reach this conclusion from the specific disciplinary rules relied upon by the hearing panel and the Board. The first is DR 4-101(B)(3), which required that a lawyer not knowingly "[u]se a confidence or secret of his client for the advantage of himself or of a third person." " 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship . . . the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4-101(A).

As the minority of the Board held, there is no evidence that respondent knowingly used confidential information acquired from his former client for the advantage of his new client. The evidence before the Board related to Rainville's fear that respondent still held confidential information and might use it against him, not that he had used it. The majority of the Board tried to fill this gap in the hearing panel's decision with its reference to respondent's expressed position that his presence as a "known" character would help settle the divorce case. We do not believe that reference can be fairly read as a threat to misuse confidential information against Rainville, especially since respondent continuously stated that he had no information from the former representation of Rainville that remained relevant thirteen years later. To the extent that the Board grounded its finding of a violation on this reference, we must conclude that the finding of a violation is not clearly and reasonably supported by the evidence. See *In re Bucknam*, 160 Vt. 355, 362, 628 A.2d 932, 936 (1993).

The Board also found that respondent violated DR 5-105(A). DR 5-105(A) forbids an attorney from accepting employment "if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests." DR 5-105(A). "Differing interests" are defined as those "that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." Code of Prof'l Responsibility, Definitions (1).

■ This disciplinary rule states the classic formulation of the prohibition of accepting a client who has a conflict of interest with a present client. By its terms, it requires the presence of two clients or potential clients. It does not apply where the conflict is with a former client who is no longer a client of the lawyer. See *Adoption of Erica*, 686 N.E.2d 967, 971 (Mass. 1997) (decided under identical provision of Massachusetts Code of Professional Responsibility).

Numerous commentators have discussed the omission of a former client conflict rule from the Code of Professional Responsibility. See C. Wolfram, Modern Legal Ethics § 7.4.2, at 363; C. Wolfram, *Former Client Conflicts*, 10 Geo. J. Legal Ethics 677, 678 (1997); Morgan, *Conflicts of Interests and the Former Client in the Model Rules of Professional Conduct*, 1980 A.B.F. Res. J. 993, 995. Indeed, the repair of that omission is one of the reasons why the American Bar Association adopted the Model Rules of Professional Conduct as a replacement for the Code. The absence of a former client conflict rule has not deterred courts from adopting broad prophylactic disqualification rules to prevent the misuse of confidential information and the appearance of impropriety. See generally Comment, *Developments in the Law — Conflicts of Interest in the Legal Profession*, 94 Harv. L. Rev. 1244, 1331-33 (1981). In creating such rules, the courts can protect the administration of justice irrespective of the narrow drafting of the lawyer disciplinary rules. Thus, in fashioning a disqualification rule, it was natural for us to look to the ethical considerations that accompanied the Code of Professional Responsibility, new statements of ethical responsibilities contained in such documents as the Model Rules and The Restatement (Third) of the Law Governing Lawyers (1998) and the appearance of impropriety. See Code of Prof'l Responsibility, Canon 9 (A Lawyer Should Avoid Even the Appearance of Professional Impropriety). The Board engaged in this kind of analysis in this case.

■ But in determining whether to discipline a lawyer under the Code of Professional Responsibility, we must find the lawyer committed "misconduct," which is defined in DR 1-102(A) as violation of a disciplinary rule or other specified misconduct. See A.O. 9, Permanent Rules Governing Establishment and Operation of the Professional Responsibility Program, Rule 7(A); cf. *In re Powell*, 533 N.E.2d 831, 836 (Ill. 1988) (Canon 9 statement that a lawyer should avoid even an appearance of impropriety is not a disciplinary rule and cannot be used as independent grounds for discipline); Wolfram, *supra*, 10 Geo. J.

Legal Ethics at 686 n.35. For the reasons stated above, we can not find breach of a disciplinary rule. We must, then, find another source of "misconduct" as specified in the Code. The Board found such source was DR 1-102(A)(7), a catchall provision that defines misconduct as follows:

**DR 1-102. Misconduct.**

(A) A lawyer shall not:

. . . .

(7) Engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.

Code of Prof'l Responsibility DR 1-102(A)(7).

Although citations to this section appear in a number of Board decisions approved by this Court, usually as an alternative source of a finding of misconduct, see, e.g., *In re Wysolmerski*, 167 Vt. 562, 562, 702 A.2d 73, 74 (1997) (mem.) (attorney violated DR 1-102(A)(7) when he lied to clients about status of cases, failed to make filings, and failed to forward settlement offers to clients), we have had occasion to consider its scope in only a few contested proceedings. In *In re Rosenfeld*, 157 Vt. 537, 544, 601 A.2d 972, 976 (1991), we upheld a Board conclusion that a lawyer violated DR 1-102(A)(7), along with two other disciplinary rules, by counseling a client to violate a court order. In *In re Berk*, 157 Vt. at 530-31, 602 A.2d at 950-51, we upheld the Board's conclusion that a lawyer violated DR 1-102(A)(7) when he purchased cocaine for his own use and to distribute to friends and an associate in his firm. In reaching the latter decision we noted that attorneys have "a duty to the profession and the administration of justice, especially to uphold the laws of the state in which he practices." *Id.* at 531, 602 A.2d at 949. We found that the lawyer's actions "reflect negatively on his professional judgment and detract from public confidence in the legal profession" and were "even more reprehensible because he encouraged and facilitated his associate's participation in a criminal act." *Id.*

In *In re Illuzzi*, 160 Vt. 474, 482, 632 A.2d 346, 350 (1993), we upheld the application of DR 1-102(A)(7) to a case in which a plaintiff's personal injury lawyer had disparaged opposing insurance defense counsel through a number of unauthorized direct communications with the insurance carrier. This holding dovetailed with a finding that the lawyer had also violated a specific disciplinary rule prohibiting direct, unauthorized contact with a represented client. As discussed below,

*Illuzzi* is also significant because we upheld DR 1-102(A)(7) against a challenge that it was void for vagueness. *Id.* at 480-82, 632 A.2d at 349-50.

Finally, in *In re McCarty*, 162 Vt. 535, 542, 649 A.2d 764, 768 (1994), we reversed a Board finding that a lawyer had violated DR 1-102(A)(7) when he neglected a client's legal matter and acted in an undignified manner to the client in a telephone conversation. We held that neglect of a client's legal matter is covered by a specific rule, DR 6-101(A)(3), and therefore should not be sanctioned under DR 1-102(A)(7), and that the lawyer's rudeness to the client "does not rise to such a level as to adversely reflect upon his fitness to practice law." *Id.*

As indicated above, we upheld DR 1-102(A)(7) against a challenge that it is void for vagueness. We acknowledged that the "generality of the phrase" in the rule "does make the rule susceptible to varying subjective interpretations." *Illuzzi*, 160 Vt. at 481, 632 A.2d at 349-50. Nevertheless, we upheld the rule because of the "impossibility of enumerating every act that might constitute a violation of professional standards" and because " 'the everyday realities of the profession and its overall code of conduct provide definition for this type of phrase and thus give adequate notice of which behavior constitutes proscribed conduct.' " *Id.* (quoting ABA/BNA Lawyer's Manual on Professional Conduct 101:1001 (1987)); see also *Ex parte Secombe*, 60 U.S. (19 How.) 9, 14 (1856) ("it is difficult, if not impossible, to enumerate and define, with legal precision, every offense for which an attorney or counsellor ought to be removed").

Although broad standards are not unconstitutional in the context of lawyer disciplinary proceedings, we must be careful to adequately define a threshold to give lawyers some warning of what kind of conduct can give rise to sanctions. As reflected in *McCarty*, "[u]nnecessary breadth is to be regretted in professional rules that can be used to deprive a person of his or her means of livelihood through sanctions that are universally regarded as stigmatizing." C. Wolfram, Modern Legal Ethics § 3.3.1, at 87; see also Restatement (Third) of the Law Governing Lawyers § 5 cmt. c. (2000) (the breadth of provisions like DR 1-102(A)(7) "creates the risk that a charge using only such language would fail to give fair warning of the nature of the charges to a lawyer respondent . . . and that subjective and idiosyncratic considerations could influence a hearing panel or reviewing court in resolving a charge based only on it"). We find appropriate statements in the decisions of the highest courts of other states. For example, the

New York Court of Appeals has held that the standard "must be whether a reasonable attorney, familiar with the Code and its ethical strictures, would have notice of what conduct is proscribed." *In re Holtzman,* 577 N.E.2d 30, 33 (N.Y. 1991). The Massachusetts and New Jersey courts have held that violation of a general rule is shown only by "conduct flagrantly violative of accepted professional norms." *In re Discipline of Two Attorneys,* 660 N.E.2d 1093, 1099 (Mass. 1996); *In re Hinds,* 449 A.2d 483, 498 (N.J. 1982). We believe that the Massachusetts and New Jersey standard captures the essence of the line we attempted to draw in *McCarty* and explains our application of DR 1-102(A)(7) in the cases in which we have employed it.

█ We cannot, consistent with that standard, conclude that respondent violated DR 1-102(A)(7) here. The Code of Professional Responsibility purported to fully regulate lawyer conflicts of interest and did not prohibit side-switching as reflected in this case. As the comment to the Restatement states: "a specific lawyer-code provision that states the elements of an offense should not, in effect, be extended beyond its stated terms through supplemental application of a general provision to conduct that is similar to but falls outside of the explicitly stated ground for a violation." Restatement (Third) of the Law Governing Lawyers § 5 cmt. c. We would be doing exactly what the Restatement comment advises against if we disciplined respondent for side-switching under DR 1-102(A)(7).

We are also mindful that there was an alternative remedy in this case, and that remedy worked. We believe that both Rainville and respondent were entitled to rely on that remedy. Vermont Rule of Professional Conduct 8.4 is the general rule defining misconduct, similar in purpose to DR 1-102(A) of the Code of Professional Responsibility. The comment to that rule notes: "A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists." At the time the issue arose in the family court, this Court had not determined the law applicable to motions to disqualify counsel because of side-switching. Respondent resisted the motion to disqualify in apparent good faith and then complied once the court made a definitive ruling disqualifying him. We are concerned that under the Board's rationale a lawyer who loses a contested motion to disqualify will be automatically subject to discipline irrespective of whether the applicable law is clear.

We cannot find that respondent flagrantly violated accepted professional norms such that his conduct adversely reflects on his

fitness to practice law. Accordingly, we reverse the Board's finding that respondent violated DR 1-102(A)(7), as well as the other disciplinary rules as discussed above. Because of our disposition, we do not reach the procedural issues raised by respondent.

*Reversed.*