2005 VT 2

**In re PRB DOCKET NO. 2002.093**

[868 A.2d 709]

No. 03-519

¶ 1. January 11, 2005. We review, sua sponte, a Professional Responsibility Board Hearing Panel decision that respondent attorney placed a misleading advertisement of professional services, in violation of Rule 7.1 of the Vermont Rules of Professional Conduct, and should be privately admonished as a consequence.[1] We affirm the hearing panel's finding and penalty recommendation.

-----

[1] Rule 7.1 provides as follows:

A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

(b) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law; or

(c) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated.

¶ 2. The facts, as stipulated by the parties and found by the hearing panel, may be briefly summarized. Respondent placed an advertisement in the Yellow Pages describing his law firm — in large capital letters placed at the top of the advertisement — as "INJURY EXPERTS." Below this description was a list of the firm's attorneys and a second, smaller caption reading: "WE ARE THE EXPERTS IN" followed by three enumerated areas of law. A complaint concerning the advertisement was filed with the Board, resulting in the firm's decision to revise the advertisement the following year by removing the quoted language.

¶ 3. Based on respondent's and disciplinary counsel's joint recommendation, the hearing panel concluded that respondent had violated Rule 7.1(c), by placing an advertisement that implicitly compared his firm's services with those provided by other lawyers in a way that can not be "factually substantiated." The panel noted that the phrase "the experts" was "an implicit statement of superiority" as compared with other firms, and had a "serious potential to mislead the consumer, since there is no objective way to verify the claim." The panel further concluded that the alternative description of the firm as "injury experts" was not "likely to create an unjustified expectation about results the lawyer can achieve," and therefore was not misleading under Rule 7.1(b). In response to disciplinary counsel's subsequent motion, however, the panel amended its decision, ruling that the phrase "injury experts" was "likely to create an unjustified differentiation and expectation among those reading the advertisement about the results which can be achieved by a lawyer claiming to be an expert" that could not be objectively substantiated, and therefore was a violation of the rule. We ordered review on our own motion, under A.O. 9, Rule 11(E), to address an issue of substantial and continuing import to the bar and the public at large.

¶ 4. On review by this Court, a disciplinary hearing panel's findings, "whether purely factual or mixed law and fact, are upheld if they are clearly and reasonably supported by the evidence." *In re Sinnott*, 2004 VT 16, ¶ 10, 176 Vt. 596, 845 A.2d 373 (mem.) (internal quotations omitted). Similarly, while we retain ultimate authority over the decision as to sanctions, we nevertheless give deference to the panel's recommendation. *In re Anderson*, 171 Vt. 632, 634, 769 A.2d 1282, 1284 (2000) (mem.).

¶ 5. Lawyer advertising is not a subject that we have previously addressed in the disciplinary context, although the last several decades have witnessed substantial regulatory changes both nationally and in many states — including our own — resulting in large measure from a series of seminal United States Supreme Court cases. *Bates v. State Bar of Arizona*, 433 U.S. 350, 383 (1977), is the landmark decision in which the high court held that lawyer advertising is a form of commercial speech protected by the First Amendment and therefore not subject to "blanket suppression." The Supreme Court recognized, however, that states may adopt regulations to ensure that advertising is not "false, deceptive, or misleading." *Id.* Thus, while holding that truthful statements regarding lawyer fees — the precise issue in *Bates* — were permissible, the Court was careful to acknowledge that

> because the public lacks sophistication concerning legal services, misstatements that might be overlooked or deemed unimportant in other advertising may be found quite inappropriate in legal advertising. For example, advertising claims as to the quality of services — a matter we do not address today —

are not susceptible of measurement or verification; accordingly, such claims may be so likely to be misleading as to warrant restriction.

*Id.* at 383-84 (footnote omitted).

¶ 6. The high court refined its analysis of attorney advertising several years later in *In re R.M.J.*, 455 U.S. 191, 205 (1982), holding that the use of truthful, nondeceptive terminology to describe an attorney's field of practice that was not on the state's approved list ("property" instead of "real estate" law) could not be prohibited. Echoing *Bates*, however, the Court again cautioned that "claims as to quality ... might be so likely to mislead as to warrant restriction." *Id.* at 201. The "quality" issue was directly joined in *Peel v. Attorney Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91 (1990). The issue there was whether a state could discipline a lawyer for truthfully advertising that he was a "Certified Civil Trial Specialist by the National Board of Trial Advocacy" under a rule prohibiting lawyers from advertising themselves as "certified" or as "specialists" except in limited circumstances. *Id.* at 96-97. A plurality of the Court, noting that the advertisement was truthful and objectively verifiable, held that it was neither inherently nor potentially misleading and therefore could not be prohibited. *Id.* at 110-11. Justice Marshall, in a concurring opinion joined by Justice Brennan, observed that the statement had the potential to mislead nonlawyers unfamiliar with the certifying agency, and suggested that rather than banning such statements, states could require supplemental "warning[s] or disclaimer[s]" explaining, for example, that the National Board of Trial Advocacy is a private organization not sanctioned by the state or federal government, to assure that the consumer was not misled. *Id.* at 117 (Marshall, J., concurring).

¶ 7. The American Bar Association Model Rules of Professional Conduct (Model Rules), which many states, including Vermont, have adopted, have been amended a number of times largely to conform to the high court's decisions. See *In re Gadbois*, 173 Vt. 59, 63, 786 A.2d 393, 397 (2001) (noting that Vermont adopted the Model Rules as of September 1, 1999); see generally Note, *Lawyer Certification and Model Rule 7.4: Why We Should Permit Advertising of Speciality Certifications*, 5 Geo. J. Legal Ethics 939, 940-42 (1992) (tracing case law development and model rule changes). Thus, Vermont's general rule on attorney advertising, Rule 7.2, permits lawyers to advertise their services through such public media as telephone directories, newspapers, television, and radio, subject to the requirements of Rules 7.1 and 7.3. Rule 7.1 prohibits "false or misleading" communications about the lawyer or the lawyer's services, and Rule 7.3 regulates direct client contact and solicitation. In addition, Rule 7.4 specifically regulates communications concerning a lawyer's area of practice, providing that a lawyer may communicate the fact that he or she "does or does not practice in particular fields of law." Under Rule 7.4(c), however, a lawyer may not "state or imply that the lawyer has been recognized or certified as a specialist in a particular field of law" except in limited circumstances involving patent and admiralty lawyers, or where the lawyer has been certified as a specialist by a "named organization," provided that the advertisement contains a disclaimer stating that there is no procedure in Vermont for approving certifying organizations.[2]

---

[2] The disclaimer is not required if "the named organization has been accredited by the American Bar Association to certify lawyers as specialists in a particular field of law." Rule 7.4(c).

¶ 8. Considered in light of the foregoing decisional and regulatory framework, we have little difficulty here in affirming the panel's findings. As the case law and rules make clear, in the area of communications concerning attorney "quality" or "specialization" the underlying principle is that consumers should be free to infer for themselves an attorney's level of quality or expertise so long as the information conveyed is truthful, objectively verifiable, and not otherwise misleading. Direct claims of expertise that are not truthful and factually verifiable, however, may be prohibited or restricted as unduly misleading. See, e.g., *Spencer v. Honorable Justices of Sup. Ct. of Pa.*, 579 F. Supp. 880, 887 (E.D. Pa. 1984) (rejecting constitutional challenge to attorney advertising regulation because "[c]laims using such terms as 'experienced,' 'expert,' 'highly qualified,' or 'competent' are difficult for a layman to confirm, measure, or verify."); *Office of Disciplinary Counsel v. Furth*, 754 N.E.2d 219, 225, 231-32 (Ohio 2001) (attorney's web site claiming to be "passionate and aggressive advocate" violated rule prohibiting unverifiable self-laudatory statements); *Medina County Bar Ass'n v. Grieselhuber*, 678 N.E.2d 535, 537 (Ohio 1997) (lawyer's Yellow Pages advertisement claiming "We Do It Well" violated rule against communication of claims that could not be verified). Plainly, therefore, respondent's advertisement proclaiming his firm to be "injury experts" and "the experts" in certain enumerated fields of law falls squarely within that category of qualitative advertising claims that are not susceptible of measurement or verification. Thus, as the panel found, they are "likely to create an unjustified expectation and differentiation among those reading the advertisement about the results which can be achieved by a lawyer claiming to be an expert," in violation of Rule 7.1.

¶ 9. Respondent does not challenge the panel's finding that the description of his firm as "the experts" in certain enumerated areas of practice was an implicit comparison with other lawyers' services that was not factually verifiable, in violation of Rule 7.1(c). He asserts, however, that his use of the phrase "injury *experts*" was permissible under the rules because it was merely the equivalent of describing the firm as "injury *specialists*." Respondent notes, in this regard, that the official Comment to Rule 7.4 indicates that "[a] lawyer is generally permitted to state that the lawyer is a 'specialist,' practices a 'specialty,' or 'specializes in' particular fields, but such communications are subject to the 'false and misleading' standard applied in Rule 7.1 to communications concerning a lawyer's services." Vt. Rules of Prof'l Conduct, R. 7.4 cmt. We find the argument to be unpersuasive for two reasons. First, the terms "specialist" and "specialty" are employed in the Comment to Rule 7.4 to refer solely to the subject of the rule, i.e., the communication of "the *fact* that the lawyer does or does not practice in particular fields of law." *Id.* Rule 7.4 (emphasis added). Nothing in the Comment suggests that it was intended to sanction the use of such qualitative terms as "expert" or "expertise."

¶ 10. Furthermore, to the extent that the term "specialist" may imply expertise, as well it might to the lay consumer,[3] we note that the Comment ex-

---

[3] See, e.g., *Fla. Bar v. Herrick*, 571 So. 2d 1303, 1307 (Fla. 1991) ("By characterizing himself as a specialist, an attorney does more than merely indicate that he practices within a particular field. The term 'specialist' carries with it the implication that the attorney has special competence and expertise in an area of law."); *In re Robbins*, 469 S.E.2d 191,193 (Ga. 1996) (upholding State Bar's asser-

pressly subjects such communications to the "false and misleading" standard of Rule 7.1. Accordingly, while the issue is not directly raised, we take the opportunity to observe that any attorney advertisement using the term "specialist" or "specialty" in this sense should be qualified by a disclaimer that the attorney has not been certified as a specialist by any recognized organization, in order to avoid potential confusion to the consumer and to comport with Rule 7.1's prohibition against misleading communications. See *R.M.J.*, 455 U.S. at 201 (noting that "a warning or disclaimer might be appropriately required ... in order to dissipate the possibility of consumer confusion or deception"); *Mezrano v. Ala. State Bar*, 434 So. 2d 732, 734 (Ala. 1983) (upholding rule requiring disclaimer in attorney advertising stating that "[n]o representation is made about the quality of the legal services to be performed or the expertise of the lawyer performing such services") (quotations omitted); *Miss. Bar v. Attorney R.*, 649 So. 2d 820, 822 (Miss. 1995) (upholding requirement that attorney advertisement listing areas of practice include disclaimer that it "does not indicate any certification or expertise therein"); *Walker v. Bd. of Prof'l Responsibility of Sup. Ct. of Tenn.*, 38 S.W.3d 540, 548-49 (Tenn. 2001) (upholding requirement that attorneys who advertise with regard to any area of law but are not certified in that area include disclaimer that they are "[n]ot certified as a ... specialist").

¶ 11. Finally, both respondent and disciplinary counsel accept the panel's rec-

_____
tion that use of the term "specialist" is misleading based on evidence that "a substantial percentage of the public expects lawyers claiming to be 'specialists' to have certain qualities which non-specialists in the same field do not have, and to do a better job") (quotations omitted).

ommendation, based on the parties' stipulation, that we impose a private admonition. In arriving at this sanction, the panel looked to A.O. 9, Rule 8(A)(5)(b), which authorizes an admonition in cases of minor misconduct, when there has been little or no injury to a client, the public, the legal system, or the profession, and when there is little likelihood of repetition by the lawyer. The panel also considered the American Bar Association Standards on Imposing Sanctions § 7.4, which provides that admonitions are appropriate when a lawyer has engaged in an isolated instance of negligence with little or no resulting harm to the client, the public, or the legal system. The panel determined that the conduct in this case met these criteria, and we discern no basis to question the panel's findings or to impose a different or additional sanction.

*Affirmed.*

Note: Chief Justice Amestoy was present when the case was submitted on the briefs but did not participate in this decision.