NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 48

No. 23-AP-302

In re Norman E. Watts, Esq.                          Original Jurisdiction
(Office of Disciplinary Counsel)
                                                     Professional Responsibility Board


                                                     May Term, 2024

Hearing Panel No. 9
Karl C. Anderson, Esq., Chair
Eric A. Johnson, Esq.
Thomas J. Sabotka, Public Member

Kaveh S. Shahi of Cleary Shahi & Aicher, P.C., Rutland, for Respondent-Appellant.

John T. Alexander, Disciplinary Counsel, Burlington, for Appellee.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.     **EATON, J.**   Respondent appeals a disciplinary hearing panel's decision, which concluded respondent violated numerous professional conduct rules and imposed a one-year suspension with one year of probation and reinstatement subject to certain conditions. On appeal, respondent argues that he is entitled to a new hearing or a reduced sanction because his rights to due process were violated and some findings were not supported by the record. We conclude that there was no violation of due process and the violations are all supported. Given the number and type of violations, respondent's lack of cooperation and remorse, and the harm caused by respondent's action, we impose a two-year suspension and one-year probationary period, with reinstatement subject to the conditions imposed by the hearing panel.

## I. Facts

¶ 2.     The panel made the following findings. Respondent was admitted to the Vermont Bar in 1987 and during the times relevant to this case was a sole practitioner focusing on employment discrimination matters. Respondent was the sole person authorized to issue payments from his law firm's operating account and Interest on Lawyer Trust Account (IOLTA). In 2018, a compliance audit was performed, and it concluded that respondent's trust-accounting practices did not meet the requirements of the Vermont Rules of Professional Conduct. The audit found that respondent commingled law firm and trust funds and failed to track or maintain documentation of each transaction, to maintain documentation for each client, and to reconcile the accounts at least monthly. In 2019, respondent stipulated to violations of Rules 1.15 and 1.15A and received a public reprimand resulting from his trust account practices.

¶ 3.     After respondent bounced two IOLTA checks, a second audit occurred in July 2020. This audit concluded that respondent continued to mismanage his IOLTA accounts in violation of the rules. He still did not track and maintain documentation of each trust-account transaction; maintain a ledger card for each client showing the trust-account activity and running balance; or reconcile the trust account at least monthly. Respondent also continued to commingle his law firm operating funds with funds belonging to clients. Some clients had a negative balance in respondent's IOLTA account, which meant that respondent used one client's funds to pay for another client's matter.

¶ 4.     In addition to the general mismanagement of his IOLTA account, there were concerns related to respondent's representation of two clients. Respondent represented G.A. in a lawsuit against a multi-national company for employment discrimination based on age. G.A. signed a retainer agreement and gave respondent $2500 to be held in trust for outstanding fees. Respondent did not keep the retainer in his IOLTA account and instead deposited it in his firm operating account. Respondent filed a three-count complaint, and after the lawsuit was dismissed

at the summary judgment stage, respondent withdrew as G.A.'s attorney in March 2019. When representation concluded, respondent did not return the unspent portion for more than seventeen months despite reminders from Special Disciplinary Counsel. The retainer agreement provided that G.A. was responsible for fees and expenses to be billed monthly. Each bill stated that the full balance was due in ten days and respondent repeatedly pressured G.A. to pay off his balance, including threatening to immediately withdraw from his case. The threats caused G.A. and his wife significant financial and emotional stress. Respondent knew that the rules prohibited him from immediately withdrawing from representing G.A. in an ongoing case but did not inform G.A. regarding the withdrawal process, including that respondent would have to file a motion and seek court approval to withdraw.

¶ 5.     J.H. retained respondent's services in a lawsuit against an educational institution for employment discrimination based on race and national origin. Before entering an agreement, J.H. sought an estimate of fees and expenses. Respondent estimated between $12,000 and $28,150 depending on the defendant's conduct and if the case proceeded to trial. When J.H.'s case was dismissed on summary judgment, she had incurred approximately $90,000 in fees and expenses. She incurred $20,000 in additional fees and expenses for the appeal. The retainer agreement indicated that J.H. was responsible for reasonable litigation expenses. J.H. challenged some of respondent's expenses as unnecessary, including time spent on the case after respondent missed a discovery deadline and the cost of a hotel in Boston after depositions ended at 5:30 p.m. J.H. provided respondent with a $5000 retainer at the beginning of his representation. In May 2017, after representation concluded, J.H. asked for a final billing statement and return of her retainer. Respondent did not return J.H.'s retainer until September 2017.

¶ 6.     Special Disciplinary Counsel (SDC) was appointed to investigate the complaints against respondent. In July 2020, during the investigation, SDC contacted respondent and reminded him to return G.A.'s retainer. In a July 24, 2020 letter, respondent represented that he

3

had returned $1,545.02 of the retainer and transferred $954.98 of the retainer from his IOLTA account to his law firm operating account to cover fees and expenses. When SDC requested documentation of the return of funds, respondent disclosed records showing that he did not request a check from his bank until August 6, 2020, and the check did not issue until August 24, 2020.

¶ 7.    SDC filed a petition of misconduct in March 2021, alleging seven counts of misconduct related to respondent's representation of G.A. and J.H., and his false statements to SDC during the investigation. Respondent also failed to cooperate with SDC's discovery requests or to follow the hearing panel's orders. Because respondent did not comply with discovery requests as ordered, the panel precluded respondent from offering into evidence any document not already provided during discovery. The panel also indicated that respondent's noncompliance would be weighed as an aggravating factor in assessing a sanction for any proven violations.

¶ 8.    Two years after the misconduct petition was filed and just five weeks before the scheduled merits hearing, an attorney entered a limited notice of appearance for respondent, seeking a continuance to allow counsel to enter a notice of appearance on respondent's behalf and for additional time to prepare. SDC objected to the continuance. Respondent's attorney responded and filed a motion to disqualify SDC. The panel denied the requests to continue and to disqualify SDC, and the hearing proceeded with respondent representing himself.

## II. Panel's Conclusions

¶ 9.    As to the alleged professional violations, the panel concluded as follows. Count I alleged violations of rules regarding client communication and the scope of representation. SDC charged respondent with violating these rules after he allowed G.A.'s good-faith-and-fair-dealing claim to be dismissed without consulting with G.A. The panel concluded that SDC did not prove this violation because respondent was not required to consult with G.A. prior to letting a claim be dismissed.

4

¶ 10. Count II alleged a violation of Rule 1.15(d), which requires the prompt delivery of funds to which a client is entitled. The panel found that respondent violated Rule 1.15(d) by failing to promptly return $1,545.02, representing the undisputed portion of G.A.'s retainer. Respondent held the funds for seventeen months. Respondent also engaged in similar conduct with J.H. and failed to provide her an accounting of the funds as she requested. Respondent conceded that he violated Rule 1.15(d) by failing to promptly return the undisputed portion of G.A.'s and J.H.'s retainers.

¶ 11. Count III alleged that respondent violated Rules 1.15 and 1.15A(a) regarding safekeeping of client funds and management of trust accounts. The panel found that respondent violated these rules by failing to keep client retainers in a trust account separate from the law firm operating account, maintain a "ledger card" showing receipts, disbursements, and a running balance for each client, and reconcile his trust account at least once a month. Respondent generally conceded these failures but asserted that the panel was collaterally estopped from sanctioning for these violations because they were the same violations that resulted in his public reprimand in 2019. The panel concluded that collateral estoppel did not bar the violations occurring after November 1, 2018.

¶ 12. Count IV alleged respondent violated Rules 1.4, regarding communication, and 8.4(c), regarding misconduct, by repeatedly threatening to stop working on G.A.'s case until he paid off his balance in full, without explaining the attorney withdrawal process required by the Vermont Rules of Civil Procedure or the Vermont Rules of Professional Conduct. Under the rules, respondent was required to seek court approval prior to withdrawal and provide G.A. an opportunity to oppose it. Respondent was also required to not adversely affect G.A.'s interests in withdrawing from representation and had to give him a reasonable opportunity to get substitute counsel. The panel concluded that respondent violated Rule 1.4 because respondent understood his professional obligation to follow the withdrawal process but did not inform G.A. of this

5

obligation to pressure G.A. into paying off his bills more quickly. The panel further concluded that respondent had an affirmative duty to disclose information about the withdrawal process to G.A. and that his failure to do so violated Rule 8.4(a).

¶ 13.   In Count V, SDC alleged that respondent violated Rule 1.5 by charging a client "an unreasonable fee or an unreasonable amount for expenses" under the circumstances. The panel concluded that respondent violated this rule. He failed to communicate the "basis or rate of the fee and expenses for which the client will be responsible," as well as any changes to the basis or rate, to the client, as required by Rule 1.5(b). He also failed to establish "whether and to what extent the client will be responsible for any costs, expenses or disbursements in the course of the representation" as required by Rule 1.5(b). Respondent charged J.H. $1,900.00 in attorney fees he had agreed not to charge. He also charged her several unreasonable fees, such as for an overnight at a hotel and a set fee per day for meals when he failed to show that he actually incurred such expenses, and he did not communicate to the client that she would be responsible for such expenses.

¶ 14.   Count VI charged respondent with violating Rules 1.4, 1.5, and 8.4(c) for providing J.H. with four inherently unreasonable and misleading estimates regarding his fees and expenses. The panel concluded that there was no violation. It found that SDC did not prove by clear and convincing evidence that respondent knew or should have known that his estimates were inaccurate, and that respondent did not engage in dishonesty or deceit regarding his fee estimates.

¶ 15.   Finally, Count VII alleged that respondent violated Rule 8.1 by making two false statements to SDC during the investigation of this disciplinary matter. He falsely stated that G.A.'s retainer remained in his IOLTA account until he transferred a portion to his operating account in 2019, and he falsely stated that he issued G.A. a check for his portion of the retainer shortly before July 24, 2020. The panel rejected as not credible respondent's assertion that the false statement

6

about returning the retainer was the result of his faulty memory and concluded that respondent acted knowingly.

¶ 16. The panel then assessed an appropriate sanction, looking to the American Bar Association's (ABA) Standards for Imposing Lawyer Sanctions for guidance, and assessing the duty owed and the harm caused for each of the violations. It found that suspension was the presumptive sanction for several of the violations—Counts II, III, IV, and VII. The violations were knowing, and respondent's conduct caused his clients actual injury or potential injury. The presumptive sanction for Count V was a reprimand in that respondent acted negligently in overcharging a client $1,900 in attorney fees.

¶ 17. The panel found numerous aggravating factors: prior disciplinary offenses; a pattern of misconduct; multiple offenses; bad-faith obstruction of the disciplinary proceeding; submission of false evidence, false statements, or other deceptive practices during the disciplinary process; refusal to acknowledge wrongful nature of conduct; and substantial experience in the practice of law. There were no mitigating factors. The panel found that the aggravating factors warranted a lengthy suspension. It concluded that a year-long suspension was appropriate to protect clients' interests and maintain public confidence in the legal profession. It found this sanction was consistent with the discipline imposed in other cases. The panel also ordered respondent to serve at least one year on probation after the date of his reinstatement pending: (a) completion of two separate compliance examinations of his trust accounts, to be undertaken at successive six-month intervals by an auditor chosen by Disciplinary Counsel and at respondent's expense, to assess respondent's compliance with the rules; and (b) Disciplinary Counsel's submission of an affidavit, stating that probation is no longer necessary and summarizing the basis for that conclusion. Respondent appeals.

¶ 18. In an appeal from a decision of a hearing panel, this Court upholds the factual findings "unless they are clearly erroneous, meaning that there is no credible evidence to support

7

them." In re Manby, 2023 VT 45, ¶ 24, __ Vt. __, 308 A.3d 465 (per curiam) (quotation omitted); see A.O. 9, Rule 13(E) (providing that panel's factual findings will not be set aside "unless clearly erroneous"). The Court reviews de novo the panel's legal conclusions. Manby, 2023 VT 45, ¶ 24. The Court gives consideration to the panel's sanction recommendation. See In re Robinson, 2019 VT 8, ¶ 27, 209 Vt. 557, 209 A.3d 570 (per curiam).

### III.  Arguments on Appeal

### A.  Due Process Claims

¶ 19.    Respondent argues that he was denied due process during the disciplinary process and is therefore entitled to a new hearing before a different panel.  "Disciplinary proceedings in Vermont are neither civil nor criminal, but basic due process rights are accorded to attorneys."  In re Fink, 2011 VT 42, ¶ 31, 189 Vt. 470, 22 A.3d 461; LaFlamme v. Essex Junction Sch. Dist., 170 Vt. 475, 481, 750 A.2d 993, 997 (2000) ("The license to practice law, for example, is a property interest, infringement of which requires due process."), cert. denied, 531 U.S. 927 (2000).  Because of the interest at stake, an attorney charged with ethical violations has a right to " 'be given a full opportunity to explain the circumstances of an alleged offense and to offer testimony in mitigation regarding any possible sanction.' "  Fink, 2011 VT 42, ¶ 31 (quoting Fla. Bar v. Baker, 810 So. 2d 876, 879 (Fla. 2002)).  Those interests are balanced against "the importance of the public interest in expeditiously resolving complaints of misconduct."  Id. (quotation omitted); see Statewide Grievance Comm. v. Botwick, 627 A.2d 901, 906 (Conn. 1993) (explaining that attorney is entitled to due process of law during disciplinary proceedings and "particular process that is due depends on the nature of the proceeding and the interests at stake").

¶ 20.    Respondent does not challenge that he was provided with all the basic requirements of procedural due process.  Respondent received notice of the grounds for discipline, he was afforded a hearing, and he had the opportunity to present evidence and question witnesses.  See Stone v. Town of Irasburg, 2014 VT 43, ¶ 27, 196 Vt. 356, 98 A.3d 769 (explaining that

8

"fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner"). Respondent instead claims that there was inherent unfairness in the process he received.

i. Appointment of SDC, Appearance of Co-Counsel, and Conflict of Interest

¶ 21. Several of respondent's arguments relate to SDC, who was assigned to investigate the complaints against respondent. On appeal, respondent argues that the appointment of SDC by the Chair of the Professional Responsibility Board was not appropriate,[1] that there were no grounds for SDC's colleague to appear as co-counsel, and that SDC had a conflict of interest because other members of her firm practiced employment law and respondent is at times an adversary, rival, or competitor.

¶ 22. Respondent fails to demonstrate how he preserved these arguments for appeal. Prior to and during three days of hearings, respondent did not object to the process on the ground that SDC was improperly appointed, that SDC's co-counsel was not authorized to appear, or that SDC had an inherent conflict because of her firm's employment practice. See Deyo v. Kinley, 152 Vt. 196, 200, 565 A.2d 1286, 1289 (1989) (explaining that aggrieved party must make "specific objection, including a clear statement of the matter to which he objects and the grounds of the objection" or issue is not preserved for appeal (quotation omitted)). Because respondent did not raise these issues in a timely manner before the hearing panel, he has not preserved them for

---

[1] There is no evidence in the record to indicate that this hearing panel had any involvement in appointing SDC. The Professional Responsibility Board has a general policy under which the Board Chair appoints an alternate if disciplinary counsel is disqualified or unable to serve. See Pro. Resp. Bd., Policies ¶ 22 (eff. March 25, 2022), https://www.vermontjudiciary.org/sites/default/files/documents/220325%20%20Board%20Polici es%20-%20Effective%20March%2025%2C%202022.pdf [https://perma.cc/8T7G-7P2Y] ("When bar counsel, disciplinary counsel, screening counsel or any member of a hearing panel has a conflict or is otherwise disqualified or unable to serve, the Board Chair shall appoint an alternate."). Because respondent did not raise this issue before the hearing panel, there is no record regarding SDC's appointment, which presumably occurred prior to the filing of a formal complaint.

appeal.[2]  See In re Wysolmerski, 2020 VT 54, ¶ 35 n.7 (declining to address argument not preserved before hearing panel).

### ii.  Request to Disqualify SDC

¶ 23.  Respondent next argues that SDC committed misconduct during the disciplinary process and that her actions warranted removing her from the case and a new hearing.  Some background facts are necessary to understand respondent's argument.  The petition of misconduct was filed against respondent in March 2021.  Respondent represented himself and there were multiple delays during the discovery phase due to respondent's noncompliance with deadlines set by the panel and failure to produce documents.  In March 2023, respondent received notice that a merits hearing would take place June 7-9, 2023.  Two months later, on May 9, 2023, an attorney, now respondent's appellate counsel, entered a limited notice of appearance for respondent, indicating the sole purpose of appearance was to seek a continuance of the scheduled merits hearing.  Counsel indicated that he intended to represent respondent and a continuance was necessary due to a scheduling conflict with a case set for a jury draw on June 7, and the need to prepare.  SDC opposed the motion, arguing that: respondent had ample notice of the hearing date

---

[2]  At oral argument, respondent's counsel alleged that SDC had a conflict because of her firm's scope of work.  When asked, he was unable to identify in the record how this argument was preserved.  He asserted that respondent, who represented himself below, had objected, but could not provide a record citation.  It is not this Court's role to search the record to determine whether an argument was preserved.  It appears that the sole reference in the record to respondent's unpreserved claims occurred on the first day of the hearing when respondent inquired about the basis for the appearance of co-counsel.  The panel indicated that if respondent wished to challenge co-counsel's involvement, he should do so in writing.  Respondent did not make any further objection or motion related to this appearance.

At oral argument, respondent's counsel also implied that respondent should be provided leeway because he was representing himself.  Litigants representing themselves are bound by the same rules as those represented by counsel.  See In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 22, 188 Vt. 262, 273, 6 A.3d 713 (court does not abuse its discretion in enforcing rules against pro se litigants); see also In re Wysolmerski, 2020 VT 54, ¶ 35 n.7, 212 Vt. 394, 237 A.3d 706 (declining to address argument not raised below even where attorney was self-represented in disciplinary proceeding).

and had already received adequate time to engage counsel and prepare; the late filing was prejudicial; the jury draw could be covered by another attorney or continued; and prospective counsel did not require additional time to prepare as he already had familiarity with the case because he had been retained as an expert and represented respondent in a malpractice case involving one of the complainants. Respondent's counsel filed a lengthy response, alleging that SDC made false statements in her opposition and that her statements were motivated by racial or religious animus against respondent's counsel. The response also requested to remove SDC. There followed several additional responses from each side.

¶ 24. The hearing panel denied the motion to continue, concluding that the interests in adjudicating the long-delayed proceeding outweighed respondent's reason for waiting two years to obtain counsel. The hearing panel noted that respondent had not filed an affidavit or certificate stating the reason for the continuance or indicating when the reason was first known. See A.O. 9, Rule 20(B) (Vermont Rules of Civil Procedure apply in disciplinary proceedings); V.R.C.P. 40(d)(1) (providing that motion to continue should be accompanied by affidavit or certificate "stating the reason therefor and the time when such reason was first known"). The panel also weighed the lengthy period of the discovery, the significant amount of time expended to schedule the three-day hearing, the advance notice provided to respondent, the complaining witnesses' rights to have their complaints adjudicated in a timely manner, and the public interest in achieving resolution of the proceeding.

¶ 25. The panel further concluded that disqualification of SDC was not warranted. The panel noted that counsel's appearance was solely for purposes of filing a motion to continue and therefore he did not have the authority to seek disqualification. Moreover, counsel had not demonstrated any prejudice to respondent from the alleged misconduct. Most importantly, the panel found that counsel had not supported his allegations with any evidence. As the panel indicated, counsel alleged that SDC discriminated against him because he "is of color with Middle

11

Eastern heritage from a predominantly Muslim region," but SDC's filing contained no direct, indirect, or veiled reference to color, ethnicity, national origin, or religion, and the tenor of SDC's pleading was adversarial but professional.[3] The panel concluded that even if there was misconduct it did not warrant removal of SDC, as there was no demonstrated prejudice to respondent.

¶ 26. On appeal, respondent argues that the panel erred in denying the motion to disqualify SDC because he alleges that SDC made false statements in her pleadings that amounted to professional misconduct. Disqualification of counsel is a "drastic measure," and the moving party bears the burden of supporting a motion to disqualify. See Cody v. Cody, 2005 VT 116, ¶¶ 16, 23, 179 Vt. 90, 889 A.2d 733 (quotation omitted). The trial court has discretion in deciding a motion to disqualify. See id. ¶ 16 (explaining that parties have right to choose counsel and disqualification may result in loss of time and money and citing cases recognizing high standard necessary to disqualify); Stowell v. Bennett, 169 Vt. 630, 631, 739 A.2d 1210, 1211 (1999) (mem.) ("A motion to disqualify counsel is a matter that rests within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion.").

---

[3] On appeal, respondent's counsel claims that during an unrecorded conference before the hearing panel, SDC referred to respondent's counsel as "not white." Respondent's counsel alleges that this statement demonstrates SDC's discrimination against him on the basis of ethnicity or race. The record on appeal does not provide any basis to confirm whether and in what context the statement was made.

The allegation has no bearing on the appropriate discipline for respondent's violations of the ethical rules. Indeed, respondent's counsel indicates that he is not making any claim of racial discrimination on appeal. Nonetheless, we mention it because the allegation made by respondent's counsel is very serious. It is professional misconduct for an attorney to "engage in conduct related to the practice of law that the lawyer knows or reasonably should know is harassment or discrimination." V.R.Pr.C. 8.4(g). This Court is extremely concerned with maintaining this professional standard. If, indeed, such misconduct occurred, it should be addressed. Unfortunately, counsel chose to make the allegation in a forum where there is no opportunity to resolve the factual record. Counsel did not raise the issue below and allow the hearing panel to address it. Moreover, because neither SDC nor the panel are participating in this appeal, there is also no other party in the appeal that can respond to the factual allegation.

¶ 27. The panel did not abuse its discretion in finding that respondent had not met that heavy burden. Respondent moved to disqualify SDC or have his case dismissed due to statements SDC made about respondent's counsel and a trial judge in a responsive pleading and SDC's alleged nondisclosure of communication with complainant G.A. We need not delve too deeply into the details of these allegations because respondent has not identified any prejudice that has resulted to him from the acts respondent alleges were objectionable. As the panel indicated, the communications with G.A. that formed the basis for respondent's allegations were relevant to Count I and the panel found no violation as to this count. Therefore, even accepting that SDC should have disclosed these communications, there was no resulting prejudice to respondent. Further, the statements in the responsive pleading to which respondent's attorney objected did not result in any loss of process to respondent. He had a full and complete opportunity to present his case to the panel.[4] He has not identified any evidence or argument that he was prevented from making due to the challenged statements.

### iii. Allegations Regarding Hearing Panel

¶ 28. On appeal, respondent also makes allegations of bias and conflict of interest by the hearing panel. Respondent asserts that his motion to disqualify SDC was effectively an ethics complaint against SDC and the panel violated its own rules by screening, investigating, prosecuting, and adjudicating the complaint. Respondent's argument confuses a motion to disqualify counsel with an ethics complaint. A motion to disqualify or sanction an attorney during

---

[4] On appeal, respondent claims that there was a "double standard" because the panel found SDC acted in good faith in replying to respondent's motion to continue but did not credit respondent's assertion that he did not act purposefully when he provided incorrect information to SDC regarding the return of G.A.'s deposit. This is not a double standard. This Court defers to the panel's determinations regarding "the credibility of witnesses and resolution of disputed or contradictory testimony is for the finder of fact." Robinson, 2019 VT 8, ¶ 29. The panel acted well within its discretion in finding that SDC's statements in her responsive pleading were argumentative assertions made in good faith. The panel also acted within its role as factfinder to determine that respondent was not credible in asserting that his incorrect statements to SDC were made knowingly.

13

litigation is different from filing an ethics complaint against that attorney. The purposes, processes, and standards differ for the two and a conclusion regarding whether to disqualify an attorney does not equate to a decision of whether an attorney violated Rules of Professional Conduct or should be subject to discipline for an ethics violation. See Weaver v. Weaver, 2018 VT 56, ¶ 5 n.4, 207 Vt. 564, 191 A.3d 978 (explaining that "courts are guided by the Vermont Rules of Professional Conduct in considering disqualification questions" but decision to disqualify "does not automatically mean that the attorney has violated the Rules of Professional Conduct"); In re Gadbois, 173 Vt. 59, 65, 786 A.2d. 393, 398 (2001) (distinguishing between standards for disqualification and for violation of ethical standards). A motion to disqualify an attorney focuses on whether there is a conflict that "will result in prejudice to one of the parties such that it is necessary for the administration of justice to remove an attorney from the case." State ex rel. Clifford v. W. Va. Off. of Disciplinary Counsel, 745 S.E.2d 225, 232 (W. Va. 2013). In contrast, attorney discipline is focused on protection of the public and, in discipline proceedings, sanctions may be imposed to maintain public confidence in the bar and deter attorneys from engaging in future misconduct. See id. at 232-33 (explaining that whether conduct warrants professional discipline is separate from issue of whether attorney should be disqualified from case due to conflict of interest that will prevent administration of justice).

¶ 29. Because the panel was not resolving an ethics complaint against SDC, there is no merit to respondent's contention that the panel violated its own rules regarding screening, investigating, and adjudicating complaints against disciplinary counsel. Moreover, the fact that the panel considered and rejected respondent's motion to disqualify SDC does not create a conflict for the panel or indicate bias. Adverse rulings alone do not create bias; a party seeking to disqualify a judge or adjudicator must demonstrate improper motivation. See Ainsworth v. Chandler, 2014 VT 107, ¶ 16, 197 Vt. 541, 107 A.3d 905 ("The fact that the trial judge has previously ruled against him does not, in itself, constitute evidence of bias."); In re Margaret Susan P., 169 Vt. 252, 257,

733 A.2d 38, 43 (1999) (explaining that adverse rulings alone do not demonstrate bias); In re Abbott, 308 A.3d 1139, 1178 (Del. 2023) (per curiam) (explaining that ruling against party does not mean hearing officer "is biased or otherwise engaging in misconduct"). Here, respondent has not identified any conflict of interest or improper motivation to warrant disqualification of the panel.

### B. Count III for Violation of Rules1.15 and 1.15A(a)

¶ 30. The panel found that respondent violated Rules 1.15 and 1.15A by commingling client retainer funds with his own account and failing to maintain an adequate client trust accounting system. Respondent did not challenge any of the facts supporting these violations. He asserted that the hearing panel was barred by collateral estoppel from sanctioning him for these violations because his prior disciplinary proceeding addressed IOLTA accounting practices. Because the prior discipline covered the period from November 1, 2017 through October 31, 2018, the panel concluded that collateral estoppel did not apply to respondent's trust accounting practices after November 1, 2018.

¶ 31. On appeal, respondent argues that violations for his accounting practices from November 1, 2018 to March 18, 2019 are barred because disciplinary counsel for the prior proceeding could have updated the audit and included these claims in the public reprimand issued in April 2019. "[C]ollateral estoppel bars a party from relitigating an already-decided issue where there has been a full and fair opportunity to litigate that issue by the same party in a prior, if not necessarily the same, proceeding." Shaddy v. Brattleboro Retreat, 2012 VT 67, ¶ 12, 192 Vt. 215, 57 A.3d 700. Collateral estoppel does not preclude imposing sanctions for respondent's conduct on or after November 1, 2018. The April 2019 public reprimand did not cover this conduct and the continued commingling of client retainer funds and failure to maintain adequate trust-accounting systems were new issues that had not previously been litigated or resolved. A prior public reprimand resulting from conduct occurring at a particular time does not serve to insulate

15

counsel from further claims of misconduct occurring at a subsequent time, even if those complaints involve the same type of misconduct.

### C. Count IV for Violation of Rules 1.4 and 8.4(c)

¶ 32. The hearing panel found that respondent violated Rules 1.4 and 8.4(c) when he threatened to withdraw from representing G.A. if his balance was not paid in full and failed to disclose information to his client regarding the attorney withdrawal process. On appeal, respondent argues that when he threatened to withdraw from representing G.A., he acted in compliance with Rule 1.16(b)(5), which pertains to attorney withdrawals, because that rule does not require a lawyer to inform his client about the withdrawal process. He asserts that Rules 1.4 and 8.4 do not apply to this conduct. Respondent did not raise this argument below and has not demonstrated how he preserved this argument for appeal. Therefore, we do not address the issue. We do note, however, that multiple rules of professional conduct may apply to the same action. In other words, just because Rule 1.16 pertains to attorney withdrawal, respondent is still subject to all the other professional rules, which require communication and honesty with clients.

### D. Count VII for Violation of Rule 8.1

¶ 33. Respondent next contends that the evidence does not support the panel's findings regarding Count VII. In response to an inquiry from SDC regarding the return of a retainer to G.A., respondent represented in a July 24, 2020 letter to SDC that he had returned $1,545.02 of the retainer and transferred $954.98 of the retainer from his IOLTA account to his law firm operating account to cover fees and expenses. When SDC requested documentation, respondent's paperwork showed that he did not ask his bank to issue a check until August 6, 2020, and the check did not issue until August 24, 2020. Rule 8.1 provides that a lawyer must not "knowingly make a false statement of material fact" or fail to disclose facts in connection with a disciplinary matter.

¶ 34. Respondent did not challenge the fact that the statement in the letter was false and that he had not yet returned G.A.'s retainer. Respondent asserted that the misstatement was the

16

result of a faulty memory and not made knowingly. The panel considered the evidence and made a credibility determination. The panel noted that SDC reminded respondent to return the retainer on July 14, and on July 24 respondent indicated that he had. The panel explained that given the fact that SDC was investigating respondent's handling of G.A.'s retainer and had been asked about it just ten days before, respondent's explanation of a faulty memory was not credible. Therefore, the panel found that respondent violated Rule 8.1(a) by knowingly making a false statement to SDC on July 24, 2020.

¶ 35. On appeal, respondent claims that the panel's findings are not credible and that the evidence should be construed to find that he acted negligently, rather than knowingly. This Court reviews the panel's factual findings for clear error. Wysolmerski, 2020 VT 54, ¶ 22. We give deference to the panel's determinations of credibility as factfinder. Robinson, 2019 VT 8, ¶ 29. As factfinder, the panel assessed respondent's explanation for his incorrect statement to SDC and did not find it credible. We will not reassess the credibility of the parties or the evidence on appeal. Given that the panel's findings are supported by the evidence, there was no error.

E. Sanctions

¶ 36. Finally, respondent argues that the one-year suspension from practice exceeds the severity of his violations, asserting that he acted without intent and that there was limited-to-no actual injury. Given the number and type of violations combined with the numerous aggravating factors, we conclude that a two-year suspension is warranted in this case.

¶ 37. This Court gives consideration to the panel's sanction recommendations but exercises its "plenary authority to reach the appropriate conclusions and sanctions." Wysolmerski, 2020 VT 54, ¶ 26 (quotation omitted). To determine the appropriate sanction, we consider "(a) the duty violated; (b) the lawyer's mental state; and (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." Id. ¶ 27 (quotation omitted). We begin with the presumptive sanction provided in the American Bar

Association's Standards for Imposing Lawyer Sanctions and then consider any aggravating or mitigating factors. Id. The overall purpose of the sanction is "not to punish attorneys, but rather to protect the public from harm and to maintain confidence in our legal institutions by deterring future misconduct." Id. (quotation omitted).

¶ 38. Here, suspension is the presumptive sanction for four of five violations—Counts II, III, IV, and VII. As the hearing panel explained, these violations involved knowing behavior, actual or potential harm to clients, and dishonesty. As to Count V regarding overcharging for fees and expenses, the panel found respondent acted negligently and a reprimand was the presumptive sanction.

¶ 39. There were numerous aggravating factors in this case. Respondent has prior disciplinary offenses. He was publicly reprimanded in April 2019 for violations related to his accounting practices. He displayed a pattern of misconduct. He committed multiple offenses involving different clients. Respondent exhibited bad faith during the disciplinary proceeding. He intentionally did not respond to SDC's discovery requests or the hearing panel's discovery orders. Respondent submitted false statements during the disciplinary process and gave false information to SDC. Respondent refused to acknowledge the wrongful nature of his conduct. Finally, respondent has substantial experience in the practice of law. There were no mitigating factors.

¶ 40. Respondent does not challenge the aggravating or mitigating factors on appeal. Instead, he attempts to minimize his behavior and the actual harm caused to his clients. Respondent characterizes his violations as merely poor office procedures or negligent conduct. As described above, the panel found otherwise, and its decision regarding respondent's mental state is supported by credible evidence in the record.

¶ 41. We conclude that a two-year suspension followed by a one-year probationary period is warranted in this case. Respondent committed five violations of the professional rules. Respondent violated duties owed to his clients and engaged in intentional and knowing behavior

18

that caused real injury to his clients. This harm included the following. Respondent's failure to timely return retainers to G.A. and J.H. caused his clients a great deal of stress and the loss of their money for seventeen and four months, respectively. J.H. paid more than four months' interest on a loan she would not have paid if respondent had promptly returned funds. Respondent withheld information from G.A. regarding the withdrawal process, causing G.A. to work weekends and sell off property to accelerate payment to respondent. G.A. and his wife experienced financial and emotional stress because of respondent's behavior. In addition, respondent negligently overcharged J.H. in attorney's fees and expenses.

¶ 42. Respondent's attempts to minimize his actions and the harm caused to his clients is particularly concerning. On appeal, respondent continues to demonstrate no remorse for his actions or exhibit any recognition for the harm caused both to his clients and the legal profession in general. Respondent characterizes the injuries here as minimal, alleging that the extent of the actual injury involved "small sums of interest." Respondent views the amounts from his perspective and fails to consider how the loss of this money impacted his clients in their circumstances.

¶ 43. Given that the presumptive sanction is suspension, that respondent committed multiple knowing violations of rules that involved duties to his clients, and the numerous aggravating factors, a two-year suspension is necessary in this case to protect the public from future harm, to deter future misconduct, and to maintain confidence in the legal system. See ABA Ctr. for Pro. Resp., Standards for Imposing Lawyer Sanctions (1986) (amended 1992), Part II, Theoretical Framework, at 7 (explaining that multiple counts of misconduct should generally result in sanction that is "consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct").

19

Respondent is suspended from the practice of law for two years with one year on probation after the date of his reinstatement pending: (a) completion of two separate compliance examinations of his trust accounts, to be undertaken at successive six-month intervals by an auditor chosen by Disciplinary Counsel and at respondent's expense, to assess respondent's compliance with the rules; and (b) Disciplinary Counsel's submission of an affidavit, stating that probation is no longer necessary and summarizing the basis for that conclusion. Respondent's suspension will begin on the date that the mandate executes under Vermont Rule of Appellate Procedure 41. Respondent must comply with the notice requirements of Administrative Order 9, Rule 27.

FOR THE COURT:

_____

Associate Justice

¶ 44. **CARROLL, J., dissenting.** I agree that respondent's claims of error are without merit. I respectfully dissent from the majority's conclusion regarding the appropriate sanction. Respondent has demonstrated an unwillingness to conform his behavior to the rules. He committed five new rule violations on the heels of a prior disciplinary sanction for similar misconduct; almost all of the new violations were committed knowingly and resulted in actual and potential harm. Respondent also engaged in deceitful and bad-faith conduct during disciplinary proceedings and there are significant aggravating factors present. Under these circumstances, I believe disbarment is necessary "to protect the public from harm and to maintain confidence in our legal institutions." In re Robinson, 2019 VT 8, ¶ 33, 209 Vt. 557, 209 A.3d 570 (per curiam) (quotation omitted).

¶ 45. "Because we bear ultimate responsibility for the discipline of Vermont attorneys, we impose without deference the sanction we find most appropriate." In re Manby, 2023 VT 45, ¶ 24, __ Vt. __, 308 A.3d 465 (quotation omitted) (per curiam); see also Vt. Const. ch. II, § 30 (empowering this Court with "disciplinary authority concerning all judicial officers and attorneys at law in the State"). Sanctions are not intended to punish attorneys but rather "to protect the public and the administration of justice from lawyers who have not discharged, will not discharge,

20

or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Ctr. for Pro. Resp., Standards on Imposing Lawyer Sanctions (1986) (amended 1992) [hereinafter ABA Standards], § 1.1.

¶ 46. As set forth by the majority, respondent has repeatedly violated the professional-conduct rules. He was publicly reprimanded in April 2019 for violations related to his accounting practices. Very shortly after stipulating to these violations, respondent engaged in similar misconduct as well as additional misconduct, which led to the filing of a seven-count complaint against him in March 2021. In a September 2023 order, the hearing panel found that respondent: knowingly failed to promptly return retainers owed to two clients; knowingly failed to safekeep client funds and properly manage his trust accounts; repeatedly threatened to stop working on a client's case until the client paid off his balance in full; negligently charged a client an unreasonable amount for expenses; and knowingly made a material false statement to Special Disciplinary Counsel (SDC) during the investigation of this case concerning the status of funds to which a client was entitled. Respondent also engaged in bad-faith obstruction of the disciplinary proceeding by failing to comply with discovery requests and failing to follow the hearing panel's orders.

¶ 47. Respondent's behavior violated ethical duties owed to his clients, which are considered "the most important ethical duties." See ABA Standards, Part II, Theoretical Framework, at 5. He caused actual and potential financial harm to his clients, including failing to return a retainer for seventeen months. Respondent also violated ethical duties owed to the public and the legal profession. His "misconduct in handling and protecting client trust accounts" caused harm to both the public and the legal profession " 'by increasing public suspicion and distrust of lawyers.' " In re Farrar, 2008 VT 31, ¶ 8, 183 Vt. 592, 949 A.2d 438 (mem.) (quoting In re Anderson, 171 Vt. 632, 635, 769 A.2d 1282, 1285 (2000) (mem.)); accord In re Fucetola, 499 A.2d

21

222, 224 (N.J. 1985) (holding that "[i]nadequate record keeping is a serious act of misconduct" that "reflect[s] adversely upon the profession" and creates "great" "potential for injury to a client").

¶ 48. Notwithstanding a reprimand for similar behavior, respondent continued to mismanage his trust accounts, causing actual injury to his clients and potential injury by jeopardizing the security of all the client funds that he held. He also negligently overcharged a client, and the panel found that his "sloppy" recordkeeping caused actual injury to his client and "created a substantial risk of overcharging clients." See In re Fink, 2011 VT 42, ¶ 36, 189 Vt. 470, 22 A.3d 461 (noting that "excessive fees feed public distrust of lawyers and decrease public confidence in the profession").

¶ 49. Respondent also engaged in deceitful and dishonest conduct. He knowingly deceived a client about the attorney-withdrawal process, violating his duty to his client and to the legal profession. He caused his client actual injury, including financial and emotional stress. As the panel found, the client lost trust in respondent and respondent's deceit deprived the client of the opportunity to get substitute counsel.

¶ 50. Additionally, respondent knowingly made a materially false statement to SDC during the disciplinary process, which violated his duty to maintain the integrity of the legal profession. He caused injury or potential injury by falsely stating to SDC that he had recently returned a client's retainer when he had not in fact done so. The panel found that his conduct caused SDC, at minimum, to spend unnecessary time trying to determine the status of his client's retainer. As with the other misconduct detailed above, this behavior injures the public and the profession "by increasing public suspicion and distrust of lawyers." Anderson, 171 Vt. at 635, 769 A.2d at 1285. Indeed, knowingly making a false statement during the disciplinary process "calls into question respondent's basic character, the first requisite of an attorney," and such falsehoods are "diametrically opposed to the fundamental dut[y] of attorneys to bring truth rather

22

than untruth to light." Comm. on Pro. Ethics & Conduct of Iowa State Bar Ass'n v. Brodsky, 318 N.W.2d 180, 183 (Iowa 1982) (alterations in original) (quotations omitted).

¶ 51.    Respondent knowingly committed four rule violations that each call for a presumptive sanction of suspension and a fifth violation that presumptively calls for a reprimand. When there are multiple charges of misconduct, "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations: it might well be and generally should be greater than the sanction for the most serious misconduct." ABA Standards, Part II, Theoretical Framework, at 7. Even before considering the numerous aggravating factors listed below, respondent's knowing engagement in the same type of behavior for which he was previously sanctioned is a matter of great concern. See ABA Standards, § 8.0 (recognizing that repeatedly engaging in similar acts of misconduct is "so serious as to warrant special discussion"); ABA Standards, §§ 8.0, 8.2 cmt. (providing that "[a]bsent aggravating or mitigating circumstances," a lawyer generally "should be suspended when they engage in the same or similar misconduct for which they were previously disciplined when that misconduct causes injury or potential injury to a client, the public, the legal system, or the profession" (emphasis added)).

¶ 52.    There are significant aggravating factors here, which support a sanction of disbarment. See ABA Standards, § 9.21 (recognizing that aggravating factors "may justify an increase in the degree of discipline to be imposed"). The aggravating factors here include: prior disciplinary offenses including similar misconduct to that at issue here; a pattern of misconduct involving multiple clients over multiple years; multiple offenses involving three different clients; bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with SDC's discovery requests and the panel's discovery orders and repeatedly seeking to delay the merits hearing in the weeks leading up to the hearing; submission of false information to SDC during her investigation; refusal to acknowledge the wrongful nature of his conduct; and more than

23

thirty years of experience in the practice of law. Indeed, as the majority notes, respondent continues to express a lack remorse for his conduct, minimizing his behavior and the harm that it caused to clients and to the profession.

¶ 53. "Vermont caselaw does not shy away from disbarment when such a penalty is appropriate." Robinson, 2019 VT 8, ¶ 76 (citing In re Karpin, 162 Vt. 163, 173, 647 A.2d 700, 706 (1993) (per curiam) (explaining that "[d]isbarment is an appropriate sanction under the ABA Standards, and the fact that almost every aggravating factor is present confirms disbarment as the appropriate sanction" (emphasis omitted))). I believe disbarment is appropriate here. Respondent has shown an unwillingness to conform his behavior to the rules, repeatedly engaging in conduct that is harmful to his clients, the public, and the profession. He engaged in deceit and bad-faith conduct during these disciplinary proceedings and has shown no remorse. The prior sanction imposed on respondent had "no apparent effect on his subsequent behavior." People v. Bottinelli, 926 P.2d 553, 558 (Colo. 1996) (per curiam) (concluding that disbarment was warranted based on pattern of misconduct, multiple offenses, lack of remorse, and bad-faith obstruction of disciplinary process, and observing that "[w]ere this the first time that the respondent had engaged in this type of misconduct, a period of suspension might be appropriate," but "respondent . . . ha[d] engaged in such conduct before, and ha[d] been suspended for it, with no apparent effect on his subsequent behavior"); In re Friedland, 416 N.E.2d 433, 438-39 (Ind. 1981) (per curiam) (concluding that "strongest form of discipline should be imposed to preserve the integrity of the legal profession and to insure the effective administration of justice" where "misconduct found in the prior proceeding together with the misconduct present in this cause establishes a pattern indicative of a serious behavioral flaw" and "[r]espondent [did] not appear to understand the responsibilities of attorneys admitted to practice in this State"), cert. denied sub nom. Friedland v. Disciplinary Comm'n of the Ind. Sup. Ct., 454 U.S. 867 (1981).

¶ 54.    The facts here are analogous to <u>In re Wysolmerski</u>, where we imposed the sanction of disbarment for an attorney who similarly committed multiple violations, including the same type of misconduct for which he had previously been sanctioned, and exhibited a pattern of misconduct.  2020 VT 54, 212 Vt. 394, 237 A.3d 706.  We recognized that, given these factors, "the Standards support a sanction more severe than the presumptive sanction for the most serious misconduct."  <u>Id</u>. ¶ 46.  The presumptive sanction in that case was a suspension, and we concluded that "[t]he next—more severe sanction—which generally should apply where multiple instances of misconduct are involved—[was] disbarment."  <u>Id</u>.  We explained that "[d]isbarment is a protective device, not an additional punishment," and concluded "that disbarment [was] the only sanction sufficient to protect the public" under the circumstances and "maintain public confidence in the Vermont bar."  <u>Id</u>. ¶ 52 (quotation omitted).

¶ 55.    I believe the same result is warranted here.  Respondent should be disbarred "to protect the public from persons unfit to serve as attorneys and to maintain public confidence in the bar, as well as to deter other attorneys from engaging in misconduct."  <u>Robinson</u>, 2019 VT 8, ¶ 73 (quotation omitted).  I therefore respectfully dissent from the majority's conclusion regarding the appropriate sanction for the violations here.

_____
Associate Justice